JOSHUA M. WHITCOMB *vs.* JAMES C. CONVERSE & others.

Suffolk. March 15. — Oct. 22, 1875. AMES & ENDICOTT, JJ., absent.

Articles of copartnership between C., W., B. and S., for the transaction of a commission business, provided that C. and W. should contribute the whole capital in unequal proportions; that C. should contribute "such time as he may be able to give;" that W., B. and S. should each contribute all their time to the business; that each partner should receive one fourth of the net profits; and that C. and W. should receive interest on the capital contributed by them. The partnership was afterwards dissolved by mutual consent, the business of the firm closed by W., and it resulted in a loss. *Held*, on a bill in equity by W. against the other partners, that the capital constituted a debt of the partnership to which all the partners were bound to contribute equally, and that, one of them being insolvent, the loss was to be borne equally by the other three.

BILL IN EQUITY, filed July 3, 1873, by a partner in the late firm of Converse, Whitcomb & Co. against the other partners,

James C. Converse, Walter Stanton and Edwin R. Blagden, to compel contribution to the losses incurred by the partnership. The articles of partnership were as follows :

" Terms of agreement of copartnership for the transaction of a dry-goods commission business in New York and Boston between the undersigned, to commence the second of January, 1871, and continue one year, under the firm name of Converse, Whitcomb & Co.

" J. C. Converse to contribute twenty-five thousand dollars ; to receive interest on the same at 7 per cent., and devote such time as he may be able to give ; to receive 25 per cent. of net profits.

" J. M. Whitcomb to contribute fifty thousand dollars, receive 7 per cent. interest on the same ; to give all his time to the business, and receive 25 per cent. of the net profits.

" E. R. Blagden to contribute all his time to the business, and receive 25 per cent. of the net profits.

" Walter Stanton to contribute all his time to the business, and receive 25 per cent. of the net profits.

" J. C. Converse and E. R. Blagden to attend to the business in Boston. J. M. Whitcomb and Walter Stanton to attend to the business in New York. Each partner shall be allowed to draw only $500 per month for personal expenses."

Hearing before *Colt*, J., who reported the case for the consid eration of the full court in substance as follows :

The plaintiff contributed $25,000 of the amount mentioned in the agreement to be contributed by him.

The partnership was dissolved by mutual consent on March 9, 1871, and the plaintiff was authorized in the agreement of dissolution to settle up the affairs of the firm. He did so, and there resulted therefrom a loss, as he contended, of $25,000, more or less, being less than the amount of the capital to be put in by the plaintiff ; but whether the loss in question was a partnership or individual loss, is one of the questions reserved as hereinafter stated. The defendant Blagden, at the time of the dissolution, was, ever since has been, and now is, insolvent and unable to pay any part of said loss. Whitcomb, Converse and Stanton have each paid back to the firm all sums drawn out by them, respectively, for personal expenses, under provision therefor in the memorandum, and Stanton, when he entered the firm, had the

control of the business of certain woollen mills, and brought this into the firm ; and he testified, without contradiction, that he brought the bulk of the business to the firm.

The defendant Stanton contended, that he was not liable to make good any portion of the capital contributed to the business by the plaintiff, and expended in paying partnership debts, and that, if liable, he was not liable to make good the share which Blagden would have contributed, but for his insolvency, or any part of said share.

The cause was reserved upon the foregoing facts and evidence. If the court shall be of opinion that the plaintiff is entitled to any contribution to said loss from either of the defendants, the cause is to be referred to a master to ascertain the amount thereof. If he is not entitled to recover from either of the defendants, the bill is to be dismissed as to such defendant.

*C. T. Russell*, for the plaintiff.

*G. O. Shattuck & O. W. Holmes, Jr.*, for the defendant Stanton. 1. The plaintiff cannot recover of his former partners, for a loss of the capital stock contributed by him. In *Barfield* v. *Loughborough*, L. R. 8 Ch. 1, where attorneys had contributed to the firm capital in certain proportions, the question was whether interest should be allowed on their respective shares in the capital, after dissolution. The Lord Chancellor, while admitting that advances beyond the stipulated amount of capital might be treated as debts, laid it down distinctly as fundamental doctrine that " Neither partner has a personal demand upon the other for the repayment of his share of the capital employed in the business." He said that " in most of such cases there is either an express written agreement, or practice and usage equivalent thereto, that during the continuance of the partnership, interest shall, before each division of profits, be credited to both parties on the amount of capital standing to the credit of their respective accounts." This is so because the capital has been employed for the profit of the firm. But there is no such claim after dissolution, notwithstanding the shares of the partners in the capital were unequal, for the very reason that it is capital, and not a debt of the concern. Interest was allowed in the particular case only on the footing of a written agreement expressly making the capital a firm debt, equally with further advances. See also *Everly* v

*Durborow*, 1 Leg. Gaz. Rep. 127, *per* Sharswood, J.; *Cameron* v. *Watson*, 10 Rich. Eq. 64, 101, 102, 103; *Heran* v. *Hall*, 1 B. Mon. 159; Lindl. Part. (2d ed.) 790, 791; Story Part. § 26, note, citing and approving Rutherforth Inst. Bk. 1, *c.* 13, §§ 32, 35; Watson Part. 57; Parsons Part. 51.

On principle it is submitted that the defendant cannot be liable. If A. and B. agree to labor together a year for their joint advantage, and to share profits, and they make no profits, each loses his labor. If A. and B. are partners in shoemaking for a year, A. to furnish leather or money to purchase leather, and B. to make it into shoes, A. and B. to divide the profits, and they make no profits, B. loses his labor as before. But B. cannot be held to insure A.'s contribution on any principle which would not equally make A. insure B. Even the seeming difference in the nature of the respective contributions is not a true one. Before the goods are sold and the question of profit or loss settled, B.'s labor has been converted into capital, in the strictest sense of the word, by the change in form and increased value which it has given to the leather. The same is true when the labor of B. consists in selling instead of changing the form of goods. He increases their value for A.'s purposes by helping them to a market, and his labor is an element in the price which they fetch. The principle is not affected by an agreement to allow interest on the capital put in while it is being used for the joint advantage, which is said to be the usual thing in *Barfield* v. *Loughborough, ubi supra.*

A wholly different case is presented when a partner advances money to his firm, which he is not required by the articles to contribute to the partnership stock, for such an advance is not a contribution to the firm capital. So, perhaps, when one partner advances all the money for a single venture, and the other is to take half the profits and contributes neither labor nor funds, it may be inferred that sharing the risk is the consideration of being permitted to share the gain. These considerations explain the decision in *Nowell* v. *Nowell*, L. R. 7 Eq. 538, the language of which induced Mr. Lindley to change his text, contrary to his own previously expressed opinion.

The only question in any case is, whether the money is a contribution to firm capital or not. The money put in by the plain

tiff in this case was put in under an agreement requiring him to
"contribute" it, just as it required Stanton to "contribute" his
time, and as he, in fact, also contributed the firm business. The
two stand on the same footing as to the risk of their respective
contributions. "Contribute" is the apt word always used to
signify bringing in to the capital stock. See *Morris* v. *Allen*, 1
McCarter, 44, 45 ; *Everly* v. *Durborow*, *ubi supra ; Cameron* v.
*Watson, ubi supra.*

   This agreement of course was made in the confident expecta-
tion of gain. Losses were not expected. The risk was consid-
ered as practically nothing and not to be taken into account, or
they would not have gone into the venture. The parties show
this by their contract, and set their own valuation on their re-
spective contributions. The contract shows that Stanton's skill
(together with the business which he brought in) was considered
as valuable as what the plaintiff contributed, above the ordinary
value of the safe use of money, which was separately paid for.
It is to be presumed from the contract that if the plaintiff had
not put in money he would not have got a quarter of the profits,
and that he was willing to employ his money in this way because
he was confident of making gains by the aid of the talents, en-
ergy and business contributed by younger men. Such partner-
ships as this are formed every day between capitalists and young
men who have ability, but want money ; and it is manifest that
this is not done in reliance upon getting indemnity for losses from
the penniless, but upon so strong an expectation that they will
turn the money to better account than the owner could without
them, as to induce the owners to disregard the possibility of loss,
and run the risk. Each party puts what he has against what he
wants ; the poor man not supposing that he is assuming the bur-
den of a debt, and the rich man not warranting a return for the
poor man's labor.

   2. If the defendant is liable, he is not to make good any part
of what another partner cannot pay. Parsons Part. 477. *Ex
parte Watson*, Buck, 449.

   GRAY, C. J. In the absence of controlling agreement, part-
ners must bear the losses in the same proportion as the profits of
the partnership, even if one contributes the whole capital, and
the other nothing but his labor or services. 3 Kent Com. 28, 29.

Whether a loss of capital is a partnership loss, to be borne by all the partners, depends upon the nature and extent of the contract of partnership.

If, as is not unfrequently the case in a partnership for a single adventure, the mere use of the capital is contributed by one part ner, and the partnership is in the profits and losses only, the capital remains the property of the individual partner to whom it originally belonged, any loss or destruction of it falls upon him as the owner, and, as it never becomes the property of the partnership, the partnership owes him nothing in consideration thereof. Story Part. §§ 27, 29. *Heran* v. *Hall*, 1 B. Mon. 159.

But where, as is usual in an ordinary mercantile partnership, a partnership is created not merely in profits and losses, but in the property itself, the property is transferred from the original owners to the partnership, and becomes the joint property of the latter; a corresponding obligation arises on the part of the partnership to pay the value thereof to the individuals who originally contributed it; such payment cannot indeed be demanded during the continuance of the partnership, nor are the contributors, in the absence of agreement or usage, entitled to interest; but if the assets of the partnership, upon a final settlement, are insufficient to satisfy this obligation, all the partners must bear it in the same proportion as other debts of the partnership. *Julio* v. *Ingalls*, 1 Allen, 41. *Bradbury* v. *Smith*, 21 Maine, 117. *Barfield* v. *Loughborough*, L. R. 8 Ch. 1. *In re Anglesea Colliery Co.* L. R. 2 Eq. 379, 387; *S. C.* L. R. 1 Ch. 555. *Nowell* v. *Nowell*, L. R. 7 Eq. 538. *In re Hodges' Distillery Co.* L. R. 6 Ch. 51, 56. 1 Lindl. Part. (3d ed.) 696, 827, 828.

Only two cases were cited in the learned argument for the defendant Stanton, in which opinions inconsistent with this view have been expressed.

The one is *Everly* v. *Durborow*, 1 Leg. Gaz. Rep. 127, a *nisi prius* decision, with no reference to authorities, except an early edition of Lindley on Partnership, which has been corrected by the learned author, *ubi supra*, conformably to the adjudged cases.

The other is *Cameron* v. *Watson*, 10 Rich. Eq. 64. That was a bill in equity to settle the affairs of a partnership, to which Cameron had contributed labor and Watson capital. The mas-

ter, to whom the case was referred, allowed the claim of Watson for so much of the capital as he had not withdrawn during the continuance of the partnership, but disallowed his claim for interest thereon. pp. 68, 73. Cameron excepted to the allowance of Watson's claim for capital, and Watson excepted to the disallowance of interest. The chancellor, before whom the exceptions were heard in the first instance, overruled the exception of Cameron, and also that of Watson as regarded interest before the dissolution of the partnership, but sustained it so far as to allow him interest after the dissolution. pp. 88–90, 95, 96. The Court of Appeals, although in one part of its opinion appearing to discountenance Watson's claim for capital, ended by confirming the master's report in every particular. pp. 103, 107, 108. So that the final judgment, while it disallowed Watson's claim for interest, established his claim for capital, and was in exact accordance with our conclusion.

In the case at bar, the partnership was not for a single enterprise, but for the transaction of a commission business in New York and Boston for a year. Converse and Whitcomb contributed the whole capital, in unequal proportions. Converse was to contribute " such time as he may be able to give ; " and Whitcomb and the other two partners, Blagden and Stanton, were each " to contribute all his time to the business." Those partners who contributed the capital did not contribute merely the use thereof, but the capital itself, and were by express agreement to receive interest thereon at rates specified in the articles of copartnership. The partners were by agreement to receive each one fourth of the net profits, and by implication of law must share the losses in the same proportion. The capital contributed became the property of the partnership ; and the partnership, consisting of all the partners, became liable to Whitcomb and Converse respectively for the amount of capital paid in by them.

Blagden, one of the partners, being insolvent and unable to discharge any part of the obligation, it must rest in equity upon the three solvent partners in equal proportions. *Whitman* v. *Porter,* 107 Mass. 522. 1 Lindl. Part. 789, 790.

*Decree for the plaintiff accordingly.*